IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 03–cv–01683–EWN–PAC

ARTHUR and RAE ANN GALLEGOS,

     Plaintiffs,

v.

LOUISVILLE LADDER GROUP, LLC., and
DAVIDSON LADDERS, INC.,

     Defendants.

---

### ORDER

---

This case, presenting primarily a claim that there was a defect in Louisville Ladder's

manufacture of a portable fiberglass step ladder, comes before the court on two motions filed by

defendants: (1) a motion for summary judgment on the primary and all other claims and (2) an

ancillary motion to strike an expert witness endorsed by plaintiffs to assist them in establishing

liability. Plaintiff Arthur Gallegos claims that he sustained injuries on September 5, 2001 when

the legs of the ladder, which he had purchased some two-and-one-half years earlier, collapsed

beneath him and he fell to the floor. Plaintiffs' theory of the case is that Arthur Gallegos, the sole

user of the ladder, had always used the ladder properly, that he was using it properly on

September 5, 2001, that the ladder collapsed beneath him (causing him to fall), and that the cause

of the collapse and fall was a structural weakness in the left leg of the ladder, a latent

manufacturing defect. Louisville Ladder's theory of the case is that the ladder was properly

designed and manufactured, that Mr. Gallegos had used it without incident for two-and-one-half

years, and that the damage to the ladder occurred when Mr. Gallegos misused the ladder, lost his

balance, and fell from the ladder, damaging it during his fall. In the briefs concerning summary

judgment, defendants argue, and plaintiffs concede, that Defendant Davidson Ladders, Inc.

should be dismissed as a party. Thus, the court will hereafter refer only to a singular "Defendant,"

Louisville Ladder.

Since the motion for summary judgment, in the court's view, depends in part on the

admissibility of expert testimony by plaintiffs' liability expert, Bruce Barnes, the court will first

consider the motion to strike his testimony. It is Mr. Barnes's opinion that the ladder collapsed

beneath Mr. Gallegos because of a weakness in the materials composing the left leg or rail at a

point just above the intersection of the leg and the bottom step of the ladder. Louisville Ladders

challenges Mr. Barnes's competency to express this opinion of several grounds. The first is that

Mr. Barnes, a civil engineer, does not possess the specialized knowledge, training, skill, or

experience, to express an opinion concerning the manufacture of a portable fiberglass ladder. The

argument is that Mr. Barnes possesses general engineering expertise, not expertise specific to

portable fiberglass step ladders. The court disagrees with defendant's suggestion that one who

has "general" experience can never opine on "specific" matters and does not believe that the cases

cited stand for that broad proposition. The question, rather, is whether the principles,

observations, and methodologies learned and used by Mr. Barnes in his training, experience, and

study can logically and scientifically be applied to questions about the failure of a portable

fiberglass step ladder. Mr. Barnes is not just a general civil engineer. According to his résumé,

he has a masters degree in civil engineering, with an emphasis on structural engineering. He has

worked on projects as a structural engineer and has experience with numerous types of building

materials, including fiberglass.  He testified that he has had experience in the testing of strength, ductility, and stiffness of fiberglass material.  He has taught engineering mechanics at the graduate and undergraduate level.  He has investigated cases involving failed structural components. Perusal of his publications reveals at least one (number 14 on the list) having to do with the testing of glass fiber composite rod.  Considering Mr.  Barnes's training and experience in structural failure generally, his knowledge concerning the characteristics of fiberglass, and his teaching experience in mechanics, the court does not believe that his lack of specific experience with portable fiberglass step ladders is fatal to his status as an expert witness.  Indeed, his experience and training covers structural failures of objects and materials far more complex than a simple step ladder.  The principles of engineering, mechanics, and physics, of which he has demonstrated knowledge, can be applied to the specific problem on which he has offered an opinion.  The court finds him to be qualified, by training and experience, to express the proffered opinion.

The court's conclusion is not undercut by defendant's reliance on excerpts from Mr. Barnes's deposition, excerpts where defendant claims that Mr.  Barnes demonstrated ignorance about American National Standards Institute (ANSI) and Occupational Safety and Health Administration (OSHA) standards for fiberglass step ladders.  Careful review of these excerpts reveals that Mr.  Barnes was unable to answer several specific questions because he did not have the ninety pages of ANSI standards before him for reference, that other answers were qualified or limited by disclaimers that Mr.  Barnes could not answer "off the top of his head," and that some of the questions were so general as to encompass standards pertaining to *design* of the ladders, something which is not at issue in this case.  Contrary to defendant's misleading argument and

twisting of the deposition excerpts, Mr. Barnes explains in his rebuttal affidavit the significance of these standards to his opinion and demonstrates awareness of the standards (and the extent of their applicability here) sufficient to qualify him as an expert.

Louisville Ladder next attacks the reliability of Mr. Barnes's opinion, arguing that it is based on insufficient testing and is not sound science. Louisville Ladder's argument is based on a truncated and incomplete understanding of Mr. Barnes' methodology. In forming his opinions, Mr. Barnes undertook three distinct tasks. His first undertaking was to interview Plaintiff Arthur Gallegos. Plaintiff was the only eyewitness to the underlying incident, and the information which Mr. Barnes obtained from him provides important data for Mr. Barnes' opinions. While it is true that Defendant questions Plaintiff's credibility and disputes his version of the event, an expert witness may properly use even disputed data in arriving at an opinion. *See* Fed. R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.") Thus, Mr. Barnes may properly use Plaintiff's version of events as part of his data — although, for reasons to be discussed later, the court agrees with Defendant that Mr. Barnes may not opine that Plaintiff was using the ladder properly in accordance with directions and warnings.

Mr. Barnes' second undertaking was to inspect the ladder which Plaintiff was using when he was injured. It appears the Mr. Barnes inspection was limited to close visual observation of the ladder, particularly to the portion which was bent, stressed, and damaged in the incident. He then applied his learning and compared his observations to damage observed and reported in construction literature and to other types of damage he had observed in diagnosing and repairing other structures more complex than a step ladder. Specifically, he applied his experience to the

observation of "the failure mode, the bending failure."  He analogized that "this failure is very

similar to that which is documented by the American Institute of Steel Construction for local

bucking criteria in channels."  He deals with these channel shapes regularly and concludes that the

observed failure was consistent with local bucking of the tip of the channel.  Barnes Depo. at 51,

ll. 1–10, *attached as* Ex. B to Plaintiff's Resp. to Mo. to Strike.  Mr. Barnes elaborates on his

analysis at the twenty-fifth through twenty-eighth unnumbered pages of his affidavit, *attached as*

Ex. C to Plaintiff's Resp. to Mo. to Strike.

Defendant criticizes Mr. Barnes for not conducting some unspecified sort of testing on the

failed components and suggests that his omission renders his opinions too subjective for

admissibility.  The court disagrees.  Mr. Barnes explained that the additional testing was costly

and destructive, and it might have been inconclusive.  The question which needs to be answered is

whether the observation and analysis which Mr. Barnes *did* undertake is sufficiently reliable for

admission into evidence, not whether additional testing might have supplied additional data for

analysis.  Defendant may properly raise these issues on cross-examination to test the credibility

and reliability of Mr. Barnes' conclusions, but they do not affect the court's determination

concerning admissibility.

The third method employed by Mr. Barnes consisted of testing on an exemplar ladder

identical in every respect to the ladder involved in the event giving rise to this lawsuit.  This

testing was of two varieties.  Using a person of Plaintiff's height and weight to perform the tests,

Mr. Barnes first asked him to replicate several times exactly what Plaintiff claimed to have been

doing when the incident occurred.  Second, he asked that the person repeatedly attempt to induce

a failure of the ladder by jumping, pushing, or performing other activities more extreme than

Plaintiff's reported activities.  In all of the testing, Mr. Barnes was unable to produce any failure.

Indeed, the second sort of extreme testing produced "global stability failures" such as overturning,

sliding, or chattering across the floor, not the component failure observed in Plaintiff's ladder.

From this testing Mr. Barnes concluded, by a preponderance of the evidence, that the incident

was caused by a manufacturing defect in the materials used in the ladder involved in the incident.

As Defendant argues, it is questionable whether this testing itself negates Defendant's

theory of the case — that Plaintiff was misusing the ladder and that this misuse caused him to fall

and strike the ladder while he was doing so.  Mr. Barnes' submissions to the court are

inconclusive on the question.  Defendant points to deposition excerpts where Mr. Barnes appears

to acknowledge that his testing is consistent with misuse by Plaintiff, while, according to Mr.

Barnes, he only meant in these excerpts to acknowledge that "anything is possible," not that

misuse is a reasonable inference based on his testing.  In any event, Defendant's argument misses

the mark.  In the circumstances presented here, Plaintiff's case does not depend on Mr. Barnes'

ability to negate misuse or to supply some sort of reconstruction of the events in question.  As

noted earlier, Plaintiff was an eyewitness and can provide a set of data from which a fact-finder

can draw conclusions as to how he was using the ladder.  In forming his conclusions and stating

his opinions, Mr. Barnes may, in effect, assume that Plaintiff's version of events is true and that

Plaintiff was properly using the ladder as claimed.  His methodology may use Plaintiff's data,

assume that misuse did not occur, and ask what alternate hypothesis explains the chain of events

here.

Defendant also attacks Mr. Barnes' alternate exemplar testing — doing things more

extreme than the things Plaintiff said he was doing — as having nothing to do with the case.

True, neither side here suggests that the activities performed in this alternate test were things which Mr. Gallegos did here, but that does not render the test irrelevant.  Mr. Barnes appears to have been trying to replicate misuse more extreme than that attributed by Defendant to Plaintiff. That extreme misuse caused the ladder to fall, slip, or chatter.  If this extreme misuse did not induce a component failure similar to the failure observed in Plaintiff's ladder, that is some basis for an inference that something other than misuse was the cause of the incident.

There is one respect in which the court agrees with Defendant that Mr. Barnes' opinion should be limited.  Having examined the warnings and other directions concerning the ladder, Mr. Barnes proposes to opine that Plaintiff was using the ladder properly in conformance with all directions and warnings.  The court sees three problems with admission of this opinion.  First, it violates the premise of Fed. R. Evid. 702 concerning admission of expert testimony.  That rule requires that the expert's opinion "assist the trier of fact to understand the evidence or to determine a fact in issue."  A fact-finder can easily peruse the warnings and directions, evaluate Plaintiff's credibility and version of events, and draw inferences concerning whether Plaintiff was complying with directions and warnings.  Expert testimony is not needed to "assist" the trier of fact.  Second, Mr. Barnes' opinion appears to be based on (1) his reading of the directions and warnings and (2) his comparison of those directions and warnings with Plaintiff's version of events.  Formation of his opinion does not appear to involve application of his training, learning, and experience.  Third, because the fact-finder can draw its own unassisted conclusions and because this opinion does not involve the application of Mr. Barnes' expertise, the court believes that the probative value of such testimony "is substantially outweighed by the danger of . . .

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid.403.

As noted earlier, resolution of several claims attacked by Defendant's motion for summary judgment follows ineluctably from the court's decision to allow most of Mr. Barnes' testimony. Plaintiff has made claims for strict product liability, breach of implied warranty of merchantability, negligence, and negligent misrepresentation. All of Defendant's attacks on these claims rest on the proposition that Mr. Barnes' testimony is inadmissable and that Plaintiff cannot, therefore, prove at least one element of each claim. Admission of Mr. Barnes' testimony is fatal to the motion's attack on the claims.

Plaintiff has also asserted claims for false representations (fraud or deceit) and violation of the Colorado Consumer Protection Act. A claim for fraud, as both sides recognize in their briefs, requires proof that Defendant knew the falsity of representations it was making, or that it made the representations with "utter indifference to" their truth or falsity. *E.g., Morrison v. Goodspeed*, 68 P.2d 458, 462 (1937). Similarly, as the parties agree, proof of an unfair or deceptive trade practice under the Colorado Consumer Protection Act requires the same type of *scienter. See* Colo. Stat. Ann. §§ 6–1–105(e), (g) & (f) (2006). The court has reviewed Plaintiff's submissions and concluded that proof of the requisite knowledge is utterly lacking. The motion will be granted as to those claims.

For the reasons recited herein, it is

**ORDERED** as follows:

1. Defendant's motion to strike (#24) is GRANTED in part and DENIED in part. It is GRANTED with respect to the expert's opinion that Mr. Gallegos complied with the warnings

and instructions affixed to the ladder, and that opinion will not be admitted into evidence in this

case.  The motion is DENIED in all other respects.

2.    Plaintiff's motion for summary judgment (#23) is GRANTED in part and DENIED in

part.  It is GRANTED as to all claims against Defendant Davidson Ladders, Inc.  The final

judgment entered by the clerk at the conclusion of the case will be in favor of Defendant Davidson

Ladders, Inc. and against Plaintiffs, dismissing all claims with prejudice.  It is GRANTED with

respect to the claims against Defendant Louisville Ladder Group LLC for intentional

misrepresentation/fraud/deceit and for violation of the Colorado Consumer Protection Act.  The

final judgment entered by the clerk at the conclusion of the case will be in favor of Defendant

Louisville Ladder Group LLC, and against Plaintiffs, dismissing these claims with prejudice.  The

motion for summary judgment is DENIED in all other respects.

3.    The court will hold a Final Pretrial Conference commencing at 4:15 o'clock p.m. on

**March 31, 2006**, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th

Street, Denver, Colorado.

4. In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.co.uscourts.gov/forms/ewn_fin_pre_ord.wpd. These specific web addresses should be used to insure that the proper format is observed.

Dated this 14th day of March, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge